IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUSAN B. FOLK | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA DEPARTMENT OF EDUCATION | : | No. 10-7377 |

**Norma L. Shapiro, J.**                                                                                   June 14, 2012

## MEMORANDUM

Plaintiff Susan Folk ("Folk") brings this action against defendant Pennsylvania Department of Education ("DOE") for alleged violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, and Titles VI and VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d *et seq.*, 2000e *et seq.* Folk, an African-American woman, worked for DOE on a reduced schedule after being diagnosed with depression, anxiety, and stress. DOE required Folk to call her supervisors on days she would be absent; Folk failed to do so and eventually stopped reporting to work. DOE terminated Folk's employment.

Folk brings three counts: (1) employment discrimination; (2) retaliation; and (3) violation of the FMLA. She cites Titles VI and VII but fails to specify which counts arise under which statutes; the court assumes she brings discrimination and retaliation counts under Titles VI and VII and the FMLA. DOE moves for summary judgment on all counts. Folk moves to amend the second amended complaint to assert a retaliation count under state law. The court will grant the DOE Motion for Summary Judgment and deny the Folk Motion for Leave to Amend the Second Amended Complaint.

**I. Facts**

Between 2005 and 2007, DOE interviewed Folk twice for a position as an early intervention advisor. During one of the interviews, Folk saw only Caucasian employees. She then wrote letters to Congressman Chaka Fattah, Governor Edward Rendell, and State Representative Rosita Youngblood, and expressed her concern there were no persons of color in some DOE offices. Second Am. Compl. ¶¶ 4–6.

In November 2007, Folk began working as an early intervention advisor in Harrisburg, Pennsylvania. Mot. Summ. J. ¶ 2. Three months later, she received an interim performance review; her performance was satisfactory. *Id.* ¶¶ 36–38.

In February 2008, DOE allowed Folk to work in King of Prussia, Pennsylvania. Four months later, she received her second interim performance review; her performance was satisfactory. *Id.* ¶¶ 39–42.

At her first annual performance review, Folk was rated "Needs Improvement" in all but one category. *Id.* ¶ 45. DOE gave Folk an Individual Development Plan listing goals and target dates. *Id.* ¶¶ 49–53. Around December 2008, DOE removed Folk from her position at the Montgomery County Intermediate Unit and replaced her with a Caucasian female. Second Am. Compl. ¶ 23.

Around August 2009, Folk and Lisa Parker, a Caucasian co-worker, were assigned to the Elwyn Philadelphia program as early intervention advisors. The program then requested a different early intervention advisor. Mark Ishman ("Ishman"), Folk's supervisor, and Maureen Cronin ("Cronin"), the Director of the Bureau of Early Intervention Services, called Lisa Parker to assure her she was not the problem and removed Folk from the assignment. *Id.* ¶ 14.

2

At her second annual performance review, Folk was rated "Needs Improvement" in all categories. Mot. Summ. J. ¶ 61. Folk then told Ishman and Cronin she felt she was being treated "unfairly" and "differently." *Id.* ¶ 79.

In December 2009, Ishman informed Folk her office location would be moved to Harrisburg, Pennsylvania. *Id.* ¶ 85. Folk then filed a complaint with the EEOC and alleged race discrimination and retaliation. *Id.* ¶ 87–88.

Folk began working in Harrisburg in January 2010. Ishman then reviewed Folk's performance every two months. He reviewed the performance of other personnel, all of whom were Caucasian, annually. Second Am. Compl. ¶ 15.

Around April 2010, Folk requested information from DOE regarding FMLA leave and submitted a "Serious Health Certification" form to DOE. Mot. Summ. J. ¶¶ 96, 99. Folk's medical provider stated in the form: (1) Folk suffered from "depression, anxiety, and stress" since February 2010; (2) Folk's condition caused periods of impaired concentration; and (3) Folk should work no more than two days per week from April 20, 2010 to October 20, 2010. *Id.* ¶¶ 100–01.

On May 5, 2010, DOE approved the request for leave. *Id.* ¶ 105. Erroneously, DOE allowed Folk to have *up to* two days off per week, whereas Folk's medical provider advised Folk to work *no more than* two days per week. *Id.* ¶ 107. DOE corrected the error two months later. *Id.* ¶ 111.

Folk began taking two days off per week. *Id.* ¶ 114. Ishman required Folk to call him or another division chief before off-days; voicemails and emails were not acceptable. *Id.* ¶¶ 117–18. Folk initially complied with the call-off procedure but eventually stopped. *Id.* ¶ 123. Ishman

advised Folk on complying with the procedure and gave her a "Memorandum of Instruction" warning her of possible disciplinary action. *Id.* ¶¶ 124–26.

On August 23, 2010, Folk stopped reporting to work. *Id.* ¶¶ 129, 134. Five days later, the DOE Director of Human Resources issued Folk a written reprimand for her failure to follow the call-off procedure. *Id.* ¶ 128.

On September 3, 2010, Ishman sent Folk a letter stating she had been absent from work without authorization and ordering her to return to work immediately. *Id.* ¶ 131. The letter required Folk to contact Ishman or Cronin before any future absences. *Id.* ¶ 132. Folk remained absent from work. *Id.* ¶ 135.

Ishman notified Folk of a fact-finding meeting to address her continuing absences. *Id.* ¶ 134. Folk emailed Ishman and stated she would not attend the fact-finding meeting and did not know when she would return to work. She acknowledged she did not follow the call-off procedure. *Id.* ¶ 135.

On September 16, 2010, the DOE terminated Folk's employment. *Id.* ¶ 136. The EEOC determined, "[b]ased upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes." *Id.* ¶ 137.

## II. Motion for Summary Judgment

Summary judgment must be granted if, viewing the evidence in the light most favorable to the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant must identify those portions of the record showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A

dispute is genuine only if there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The nonmovant may not rely upon "mere allegations, general denials, or . . . vague statements[.]" *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992).

### A. Eleventh Amendment Immunity

A state, as sovereign, is immune from suit under the Eleventh Amendment[1] unless it waives immunity, but Congress may abrogate state immunity under § 5 of the Fourteenth Amendment.[2]

Congress abrogated state immunity for actions arising under Titles VI and VII. 42 U.S.C. § 2000d-7(a) ("A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of . . . title VI of the Civil Rights Act of 1964 . . . ."); § 2000e(a) (Title VII; defining "person" to include "governments, governmental agencies"); § 2000e(f) (Title VII; defining "employee" to include individuals "subject to the civil service laws of a State government, governmental agency or political subdivision").

Congress attempted to abrogate state immunity for actions arising under the FMLA self-care provision, 29 U.S.C. § 2612(a)(1)(D) ("self-care provision"), but the Supreme Court

---

[1] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

[2] Section 5 of the Fourteenth Amendment provides: "The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article."

held the abrogation was an invalid exercise of congressional power. *Coleman v. Court of Appeals of Md.*, 132 S. Ct. 1327, 1332, 182 L. Ed. 2d 296 (2012).

DOE is an entity of the Commonwealth of Pennsylvania, *see* 71 P.S. § 61, and has not waived Eleventh Amendment immunity.

**B. FMLA**

The FMLA entitles eligible employees to 12 work weeks of unpaid leave during any twelve-month period. An employee may take leave under the FMLA self-care provision for the employee's serious health condition making the employee unable to perform at work. 29 U.S.C. § 2612(a)(1)(D). Folk bases her FMLA claims on her own serious health condition.

Because the Folk FMLA claims arise under the self-care provision, DOE is immune from this action. *See Coleman*, 132 S. Ct. at 1332. The DOE Motion for Summary Judgment on the FMLA claims will be granted.

**C. Title VI**

Title VI provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity *receiving Federal financial assistance*." 42 U.S.C. § 2000d (emphasis added).

In an affidavit, Ishman averred, "[t]he salaries of [early intervention advisors], and all other [Office of Child Development and Early Learning] staff, are funded by state money and are in no part funded by federal money." Mot. Summ. J., ex. 5, ¶ 14. Folk speculated DOE received federal financial assistance but offered no evidence establishing a disputed issue of material fact.

*See* Resp. Mot. Summ. J. at 6; Folk Letter of January 31, 2012 (filed with this memorandum). The DOE Motion for Summary Judgment on the Title VI claims will be granted.

### D. Title VII

#### 1. Discrimination

Folk alleges DOE transferred her to Philadelphia in February 2008 while two Caucasian co-workers, Lisa Parker and Cheryl Rank, remained in King of Prussia. DOE later transferred Folk to Harrisburg to be supervised by Ishman, even though Ishman claimed to be proficient at "distance supervision" and remotely supervised Lisa Parker, Cheryl Rank, and Charlene Dougherty. *See* Resp. Mot. Summ. J. at 3. Folk argues these decisions were racially motivated.

Title VII provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title.

42 U.S.C. § 2000e-3(a).

To sustain her Title VII discrimination claim, Folk must first show a *prima facie* case of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To show a *prima facie* case of discrimination, Folk must show: (1) "[s]he belongs to a racial minority"; (2) "[s]he was qualified for the position"; (3) she suffered an adverse employment action; and (4) "other employees not in a protected class were treated more favorably." *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 638 (3d Cir. 1993). To satisfy the fourth element, Folk must show she was similarly situated in all relevant respects to a better-treated non-minority employee. Generally this requires a plaintiff to show "the two employees dealt with the same supervisor,

were subject to the same standards, and had engaged in the same conduct" without differentiating circumstances. *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 222–23 (3d Cir. 2009) (unpublished) (citation omitted).

The parties do not dispute Folk belongs to a racial minority and suffered an adverse employment action. DOE argues Folk cannot show a similarly situated non-minority co-worker was treated more favorably because her co-workers worked at a "much higher level," "generated few complaints," and "followed orders." Mot. Summ. J. at 23–24.

Folk admitted she submitted reports late but said under oath other employees submitted reports late as well. *See* Folk Dep. at 106:6–14. At least one complaint involved Folk and Lisa Parker but resulted in adverse action against Folk only. Folk failed to identify which early intervention advisors also submitted late reports, and Folk admitted Lisa Parker was more experienced than she, *see* Folk Dep. at 83:14–17. Because Folk has failed to show DOE treated non-minority employees more favorably under similar circumstances, she has failed to establish the fourth element of a *prima facie* discrimination case. *See Opsatnik*, 335 F. App'x at 222–23.

Even if Folk could establish a *prima facie* discrimination case, her employment discrimination claim would not withstand the DOE Motion for Summary Judgment. If a plaintiff establishes a *prima facie* discrimination case, the burden then shifts to the employer to offer nondiscriminatory reasons for the adverse employment actions. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). A plaintiff must then produce evidence of "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in those reasons so that a reasonable factfinder could infer the employer acted discriminatorily. *See Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994). DOE has offered multiple legitimate, nondiscriminatory reasons

for the adverse employment action. *See* Mot. Summ. J. at 26–34. Folk has not shown evidence discrediting those reasons. Instead she admitted most of them. *See, e.g.*, Folk Dep. at 50:14–60:5; 102:22–106:14; 184:10–187:16.

Because Folk has failed to establish a *prima facie* discrimination case, the DOE Motion for Summary Judgment on the Title VII discrimination claim will be granted.

**2. Retaliation**

Folk alleges DOE retaliated against her for filing a racial discrimination complaint with the EEOC. She alleges the DOE: (1) gave her negative performance reviews; (2) intentionally antagonized her in a performance review in October 2009; (3) made her comply with the call-off procedure; and (4) terminated her employment. *See* Second Am. Compl. ¶¶ 16–24; Folk Dep. at 116.

To establish a *prima facie* retaliation case under Title VII, Folk must show: (1) her activity was protected by Title VII; (2) she suffered an adverse employment action; and (3) a causal connection existed between her protected activity and the adverse employment action. *Moore v. City of Phila.*, 461 F.3d 331, 340–41 (3d Cir. 2006). If Folk can establish a *prima facie* retaliation case, the *McDonnell Douglas* test applies. *Id.* at 342.

Folk filed a racial discrimination complaint with the EEOC; DOE does not dispute this was activity protected by Title VII.

To show she suffered an adverse employment action, Folk must show the action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Moore*, 461 F.3d at 341 (citation omitted). Folk did suffer an adverse employment action; the

call-off procedure and other adverse actions she alleged might have dissuaded a reasonable worker from filing an EEOC complaint. *See Moore*, 461 F.3d at 341 (citation omitted).

A plaintiff can show a causal connection between protected activity and an adverse employment action through temporal proximity, an intervening pattern of antagonism, or other circumstantial evidence. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280–81 (3d Cir. 2000).

Folk received her first negative performance review around November 2008—over one year *before* she filed her EEOC complaint in December 2009. Folk said under oath Ishman and Cronin intentionally antagonized her in the performance review of October 26, 2009—about two months *before* she filed her EEOC complaint. *See* Folk Dep. at 116. Even if Ishman and Cronin antagonized Folk, their antagonism began *before* Folk filed the EEOC complaint. This is not evidence that filing the EEOC complaint caused retaliation. *Compare Robinson v. Se. Pa. Transp. Auth.*, 982 F.2d 892, 895 (3d Cir. 1993), where there was causation where plaintiff was subjected to a "constant barrage of written and verbal warnings . . . , inaccurate point totalings, and disciplinary action, *all of which occurred soon after plaintiff's initial complaints* and continued until his discharge" (emphasis added) (internal quotation marks omitted).

DOE made Folk comply with a call-off procedure in May 2010—five months after she filed the EEOC complaint. DOE terminated her employment in September 2010—nine months after she filed the EEOC complaint. Both adverse employment actions are too far removed from the filing of the EEOC complaint to establish causation. *See Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (two months between protected activity and an

adverse employment action did not unduly suggest causation). Nor has Folk established causation through other circumstantial evidence. *See Farrell*, 206 F.3d at 280–81.

Even if Folk could establish a *prima facie* retaliation case, her retaliation claim would not withstand the *McDonnell Douglas* test. DOE has offered multiple legitimate, nonretaliatory reasons for the adverse employment actions, *see* Mot. Summ. J. at 26–34, and Folk has admitted most of them, *see, e.g.*, Folk Dep. at 50:14–60:5; 102:22–106:14; 184:10–187:16.

Because Folk cannot meet her burden of proof that filing the EEOC complaint caused an adverse employment action, she cannot prevail on her retaliation claim. The DOE Motion for Summary Judgment on the Title VII retaliation claim will be granted.

**III. Motion for Leave to Amend the Second Amended Complaint**

Folk filed a Response to the DOE Second Supplement to the Motion for Summary Judgment and requested leave to assert a retaliation claim under state law. *See* Resp. Second Supp. Mot. Summ. J. (paper no. 30) at 3. The court construes the Response as a Motion for Leave to Amend the Second Amended Complaint.

Federal Rule of Civil Procedure 15(a)(2) provides, in relevant part: "[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." 28 U.S.C. § 1367(c) provides, in relevant part: "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."

The court, having dismissed all claims over which it has original jurisdiction, will decline to exercise supplemental jurisdiction over the state law retaliation claim. *See* 28 U.S.C. § 1367(c). DOE has not consented to Folk amending her complaint, and the court, in its

discretion under Rule 15(a)(2), will not give Folk leave to assert a claim over which the court will not exercise jurisdiction. *See* Fed. R. Civ. P. 15(a)(2). The Folk Motion for Leave to Amend the Second Amended Complaint will be denied.

## IV. Conclusion

The court will grant the DOE Motion for Summary Judgment on all counts. The Folk Motion for Leave to Amend the Second Amended Complaint will be denied. An appropriate order follows.